1
RYAN KATZENBACH & DIANA MAIOCCO
c/o DIANA MAIOCCO

2
4935 Beverly Boulevard, Apt 16
Los Angeles, California 90004

3
TELEPHONE: (323)681-1894
EMAIL:        ryan@amityvillefilm.com

4

5
PLAINTIFFS IN PROPRIA PERSONA

6

7

8
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

9
WESTERN DIVISION

10
RYAN KATZENBACH and DIANA MAIOCCO,
individuals;

CASE # CV 16-8060-PSG (JEMx)

11

12
Plaintiffs,

PLAINTIFF'S REPLY TO COURT'S
ORDER TO SHOW CAUSE RE:
DISMISSAL OF DECLARATORY
RELIEF ACTION, and PLAINTIFF'S
REQUEST FOR LEAVE TO AMEND

13
-vs.-

14
GAIL BLECKMAN, an individual;

15
Defendant.

16
        On November 10, 2016, the Court issued an order to Plaintiff's to Show Cause

17
as to why their case against the Defendant should not be dismissed.  Plaintiffs come before the

18
Court to present their arguments as to why declaratory relief is proper before this Court.

19
## I. ARGUMENTS

20
## A. THE PLAINTIFF'S COMPLAINT SATISFIES THE REQUIREMENTS
   FOR DECLARATORY RELIEF

21

22
        1.      Plaintiff's declaratory relief complaint alleges  "...facts sufficient to

23
establish an actual controversy." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210

24
(7th Cir.1980). The disagreement must not be nebulous or contingent, but must have taken

25
on a fixed and final shape so that a court can see what legal issues it is deciding and what ef-

26
fects its decision will have on the adversaries. *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237,

27
244, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *United States v. Arnold,* 678 F.Supp. 1463, 1465–66

28
(S.D.Cal.1988).   In this particular case, the "actual controversy" has been absolutely defined

REPLY TO ORDER TO SHOW CAUSE
KATZENBACH V. BLECKMAN
1

exhibits included with the Complaint that Defendant does not have a federally perfected copy-right on the material for which she has alleged violation.  Surely, in her reply pleading to the Court and subsequent hearing, if the Court grants such, the validity of the parties' claims will be absolutely determined.

3.      Because Defendant's attorney has presented Plaintiffs' with a lawsuit specifically lodging a copyright claim against them, while also demanding $1.5 million to settle the case, the Plaintiff's are further entitled to Declaratory relief as they "...have standing to pursue a declaratory relief action regarding copyright infringement, a plaintiff must show that "under all the circumstances of the case, there is a substantial controversy between *1085 parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555–56 (9th Cir.1989). In particular, the plaintiff must have "a real and reasonable apprehen-sion that he will be subject to liability if he continues" the allegedly infringing conduct. Id. at 1556.  *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1084–85 (N.D. Cal. 2012)  Clearly, there is "sufficient immediacy...to warrant declaratory relief."  Furthermore, because the Defendant has stated that she will seek an injunction against the Plaintiffs' and their distribution channels, there is a "reasonable apprehension that he will be subject to liability if he continues" in the distribution and broadcast of Plaintiffs' film series.  Plaintiffs' need im-mediate adjudication as the parties rights, obligations and responsibilities in order to mitigate against potential further damages.  Such damage will cause irreparable harm to the Plaintiffs and their distributors. While the Defendants letter and unfiled lawsuit was filed as an exhibit to the Plaintiff's Complaint, they include it herewith as Exhibit "A" to this reply for the Court's quick reference.

4.      In further support of their argument, Plaintiff's bring to the Court's at-tention *Bryan Ashley Int'l, Inc. v. Shelby Williams Indus., Inc.*, 932 F. Supp. 290, 292 (S.D. Fla. 1996), a case that is similar to the instant one before this Court.  The *Ashley* Court wrote "In the instant action, the letter from defense counsel accusing the plaintiff of misappropriating the intellectual property of the defendant and demanding that the plaintiff cease and desist any

**REPLY TO ORDER TO SHOW CAUSE**
**KATZENBACH V. BLECKMAN**                                                    3

1  further misappropriation amounts to action creating a "reasonable apprehension" of litigation,

2  thus satisfying the first prong of the *Hewlett–Packard* test. Furthermore, the continued sale of

3  the potentially "infringing products" satisfies the second prong of the test. See *Flint Ink Corp.*

4  *v. Brower*, 845 F.Supp. 404, 407 (E.D.Mich.1994) (patentee's letters charging infringement and

5  demanding the cessation of such infringement, along with alleged infringer's denial of infringe-

6  ment, gave rise to actual controversy warranting issuance of declaratory judgment).   As can

7  be seen with *Ashley*, which was allowed to move forward in declaratory adjudication, there

8  Plaintiffs' instant case is almost entirely identical.  Defendant Bleckman has alleged copyright

9  infringement and various intellectual property violations; she has demanded that the Plaintiffs'

10  cease and desist and has threatened litigation, including injunctive relief.  Plaintiff's declaratory

11  relief action should be allowed to move forward.

12  **D.  PLAINTIFF REQUESTS THAT THE COURT GRANT A TWO-WEEK LEAVE
     TO AMEND WITH REGARDS TO ORAL CONTRACT CLAIMS**

13

14       5.     While Plaintiffs' believe that they have addressed the reasons why their

15  need for adjudication on the copyright issues are warranted before the Court, the Plaintiff's seek

16  a brief leave to amend of two-weeks from the Court to amend their lawsuit with regards to the

17  claims concerning the oral agreement between the Plaintiffs and Defendant which will clarify

18  these claims and also solidify them with new facts learned since this action was commenced.

19  Plaintiffs believe the incorporation of these new facts will clarify the issues for the Court and

20  thus make adjudication in favor of Plaintiffs easily determinable.

21       6.     Since the time the Complaint was filed on October 28, 2016, there have

22  been new documents and materials turned over by a colleague and co-producer of the Plaintiffs'

23  and Defendant; roughly about 185 screen captures and messages sent by the Defendant to this

24  mutual colleague which contain a great deal of information about the nature of the agreement

25  between the parties and, based on preliminary review, these documents seem to indicate that the

26  Defendant breached the agreement almost from its July 2010 commencement.  Plaintiffs are still

27  trying to absorb all of the facts and materials within these documents.  Plaintiffs believe that

28  once these documents have been thoroughly read and reviewed, they will be able to file a much

---

REPLY TO ORDER TO SHOW CAUSE
KATZENBACH V. BLECKMAN                                                                    4

1  more cohesive and rock solid amended Complaint that will make adjudication upon the issues

2  surrounding the oral agreement much clearer.

3         7.     The Plaintiffs have not yet located the Defendant to personally serve

4  her; therefore, there are no responsive/timing considerations and thus the Defendant would be

5  served a First Amended Complaint upon which her reply would be due to the Court.

## II. CONCLUSION

8      8.   For the reasons cited within this Reply, Plaintiffs are optimistic that the Court will

9  allow them to proceed forward in obtaining an adjudication as to the rights and responsibilities

10  of the parties involved in a timely fashion.

11  **DATED: 29 NOVEMBER 2016**

RYAN KATZENBACH

DIANA MAIOCCO

REPLY TO ORDER TO SHOW CAUSE
KATZENBACH V. BLECKMAN

# EXHIBIT "A"

Complaint For Declaratory Relief
Katzenbach v. Bleckman

# THE KERNAN LAW FIRM

9663 Santa Monica Blvd. Suite 450
Beverly Hills, CA 90210

Stephen M. Kernan, Esq.
Direct: (310) 490-9777
Facsimile: (310) 861-0503
mkernan@kernanlaw.net

Adjunct Professor of
Entertainment Law
University of California,
Hastings College of Law

September 30, 2016

**VIA U.S. MAIL AND EMAIL**

Re:     Copyright infringement and Breach of Contract

Dear Mr. Katzenbach:

My client, Gail Bleckman, is the owner of copyright in video footage taken by her (the "Works") while she was working as an independent producer on your project about the Amityville murders ("Amityville Project"). As explained below, you never obtained an assignment of our clients copyrighted material, which you used in at least three films and one special aired on REELZ, which gives rise to both a copyright claim against you, and a copyright claim against all of the distributors of your films including REELZ and Amazon.

You are also in breach of an agreement between you and Ms. Bleckman to pay her 5% of all gross receipts derived from the Amityville Project ("Oral Agreement"), which includes but is not limited to, gross receipts from exploitation of the following films:  "Shattered Hopes: The True Story of the Amityville Murders - Part 1: From Horror to Homicide"; "Shattered Hopes: The True Story of the Amityville Murders - Part 2: Mob, Mayhem, Murder"; "Shattered Hopes: The True Story of the Amityville Murders - Part 3: Fraud & Forensics" ("Films"), a special aired on television through the REELZ network titled "High Hopes: The Amityville Horror Murders" ("REELZ Special") and a DVD interview with convicted killer Ronald DeFeo Jr. ("DeFeo Interview").

Finally, you have misappropriated Ms. Bleckman's ideas and proprietary research and breached an implied-in-fact contract to pay Ms. Bleckman for the use of those ideas and proprietary research in connection with the Amityville Project and all subsequent properties developed therewith.

## Infringement of Ms. Bleckman's Copyrights

The Copyright Act of 1976 provides that copyright ownership "vests initially in the author or authors of the work." 17 U. S. C. § 201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. § 102; *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989).

As you assert in your October 27, 2010 Authorization Letter (Exhibit "A"), Ms. Bleckman was an independent agent at the time that she worked on the Amityville Project. As an independent contractor, all copyrights in footage, photographs, and other protectable materials created by Ms. Bleckman, vested in Ms. Bleckman and cannot be exploited without express written permission. See *Garcia v Google, Inc.*, 743 F3d 1258 (2014); See also *Gaiman v McFarlane*, 360 F.3d 644 (2004).

1

Furthermore, you never obtained a written assignment of rights in any of Ms. Bleckman's protected Works, and copyrights must be transferred by written assignment. The Copyright act states that "[a] transfer of copyright ownership, other than by operation of law, *is not valid* unless an instrument of conveyance, or a note or memorandum of the transfer, *is in writing and signed by the owner of the rights* conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a) (emphasis added).

As the copyright owner of all of these Works, my client has several exclusive rights under The Copyright Act 1976. These exclusive rights include the right to reproduce the Works (17 U.S.C. § 106(1)), and to publish and distribute the Works to the public, including by way of sale (17 U.S.C. §§ 106(3)). It is an infringement of copyright to do any of the acts comprised in the copyright in relation to the whole or a substantial part of the Works, or to authorize such an act, without the permission or license of the copyright owner. In other words, use without a valid license, as is the case here, is considered copyright infringement in violation of U.S. Copyright Law.

On at least two occasions, Ms. Bleckman emailed you and specifically asked that you either omit or reshoot footage to which she owned rights, and that you cease and desist from using the footage. (Exhibits "G" and "K") That footage later appeared as part of the REELZ Special. Specifically, the scene appears at approximately 1:41:13 in the REELZ Special, and depicts my client pointing at blood flakes on clothes and shell casings.

As you have failed to seek permission or a license from the owner of copyright in these Works to use them in your Films and other properties, the conduct described above constitutes infringement of my client's copyright.

### Breach of the Oral Agreement

The breach of contract claims are straight forward, as set forth in the complaint attached.

As to the Oral Agreement, it is clear through numerous emails and other correspondence between you and Ms. Bleckman that you agreed to pay her 5% of all gross receipts. (See Exhibits "H", "J" and "K"). To date, Ms. Bleckman has yet to receive any payments despite the full performance of her obligations to provide her proprietary research to you.

Additionally, Ms. Bleckman reached out to you regarding payment in connection with the airing of the REELZ Special, and you advised her to sign the proposed long form contract you sent to her on or around October 12, 2012 ("Proposed Contract") before payment could be remitted. (Exhibit "H"). In an effort to enter into a good faith negotiation with you, Ms. Bleckman hired an attorney (Phil Wild) who sent to you a list of revisions to the Proposed Contract. (Exhibit "I") You responded by rebuffing her attempts to negotiate (Exhibit "J").

### Breach of Implied in Fact Contract

The claims for breach of implied contract are equally straight forward under California law because the law implies an obligation to pay for the use of our client's ideas and research.

"Where an idea has been conveyed with the expectation of the purveyor that compensation will be paid the idea is used, there is no reason why the producer who has been the beneficiary of the conveyance of such an idea, and who finds it valuable and is profiting by it, may not the for the first time, although he has no obligation to do so, promise to pay a reasonable compensation for that idea – that is, for the past services of furnishing it to him – and thus create a valid obligation. *Blaustein v. Burton,* 9 Cal.App.3d 161, 182 (1970).

2

As you have stated in numerous correspondence with Ms. Bleckman as well as articles found through your project's website, Ms. Bleckman's research that she disclosed to you with the expectation of payment, led to the development of key story lines in the Amityville Project. (Exhibit "B", "C" and "D").

First, there need not be an express agreement for an implied-in-fact contract to be formed. *Gunther-Wahl Productions v. Mattel* 104 Cal.App.4[th] 27 (2002). All that is required is that you knew or should have known from the circumstances that Ms. Bleckman had an expectation of payment for the use of her ideas. *Id.*

Second, the obligation to compensate Ms. Bleckman arises out of the circumstances under which her research and ideas were disclosed: the question is whether there is an implied understanding that the disclosure of ideas is for mutual business purposes. *Thompson v. California Brewing Co.* 191 Cal.App.2d 506, 510 (1968)

Moreover, a disclosure made for the purpose of partnering on entertainment projects is sufficient consideration. *Montz v. Pilgrim Films*, 649 F.3d 975, 977 (9th Cir. 2011). The consideration for the obligation to compensate is the disclosure.

Any missing "deal points" are implied by what is reasonable and what is consistent with custom and practice in the industry (e.g. that Ms. Bleckman be an executive producer on the project for having provided the information that led to its creation). *Gunther-Whal Productions*, supra, 63-65.

In addition to you, Diana Maiocco, and Amityville Holdings, LLC are liable as co-obligors (*Keppelman v. Heikes,* 111 Cal. APP.2d 475, 481 (1952) (" Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."); *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 206 (2010) ("it is the settled rules that 'to render a person civilly liable for inures resulting from a conspiracy of which he is a member, it is not necessary that he should have joined the conspiracy at the time of its inception; everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance or it." *Id.*)

### Conclusion

My client desires to resolve this matter amicably and assumes the same from you. Again, at no point in time did my client authorize your use of the Works listed above. If previous licensing or permission has been given to you for the use of any of the Work, we request that you provide proof of such authorization. Otherwise you will be subject to the following:

According to U.S. Copyright Law, my client is entitled to seek an award of statutory damages for all infringements in involved this matter, in a sum up to $30,000 for each infringement. (17 U.S.C. § 504(c)(1).) If a court finds that the infringement was committed willfully, my client is entitled to seek an award of $150,000 for each infringement. (17 U.S.C. § 504(c)(2).)

To rectify this infringement of the aforementioned rights, we require that you:

1.      Immediately cease and desist infringing my client's copyrights, including, but not
        limited to, discontinuing any and all publication, exhibition, or dissemination of

Films, REELZ Special, and DeFeo Interview containing the infringing Works and destroying any such copies of said properties; and

2.    Provide my client with $150,000 per airing of the REELZ special for a total of no less than $1.5 million for the use of her Works to date.

State courts in California and New York have returned verdicts for copyright infringement ranging from $100,000 to $125 Million. Our client has a very strong case that you intentionally infringed her rights in her copyrighted footage without her permission, and we believe that a jury will find in for her in the higher range of the verdicts.

Furthermore, my client demands an accounting of all revenues derived from properties created in connection with the Amityville Project including but not limited to the Films listed above, the REELZ Special and the DeFeo Interview and any other works that have utilized my client's copyrighted footage and proprietary research. In addition to an accounting, My client demands that your immediately forward payment of her 5% of the gross receipts of for her work on the Amityville Project, including but not limited to 5% of gross receipts from all distribution, both domestic and foreign, and all merchandising.

You are now on notice as to my client's copyright in respect of the Works described above. If I do not receive an adequate response within 15 days of this letter, I will take any and all such action on behalf of my client in order to protect her rights including, without limitation, legal action for injunctive relief and to recover damages, together with accrued interest and costs. My client otherwise reserves all her rights under the law. If we are unable to reach speedy a resolution to this matter, my client reserves the right to pursue any and all legal claims against you, Diana Maiocco, Amityville Holdings, LLC, the REELZ network and any other relevant parties including but not limited to Amazon and any and all foreign distributors.

Please also be advised that you are under a legal duty to maintain, preserve, retain, protect, and not destroy any and all documents and data, both electronic and hard copy, that may be relevant to Bleckman's claims as set forth in the attached complaint. The failure to preserve and retain the electronic data and evidence outlined in this notice may constitute spoliation of evidence which will subject you to legal claims for damages and/or evidentiary and monetary sanctions.

I look forward to hearing from you and promptly resolving this matter.

Very Truly Yours,

*S. Michael K——*

S. Michael Kernan
[Enclosures]

4

S. Michael Kernan, State Bar No.181747
R. Paul Katrinak, State Bar No. 164057
THE KERNAN LAW FIRM
9663 Santa Monica Blvd Suite 450
Beverly Hills, California 90210
Telephone: (310) 490-9777
Facsimile: (310) 861-0503

Attorneys for Plaintiff
GAIL BLECKMAN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GAIL BLECKMAN, an individual; | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTION FOR:** |
| vs. | **1. COPYRIGHT INFRINGEMENT** <br> **2. BREACH OF IMPLED-IN-FACT** |
| RYAN KATZENBACH, an individual dba KATCO MEDIA; DIANA MAIOCCO, an individual; AMITYVILLE HOLDINGS, INC., a California Corporation; HUBBARD BROADCASTING, INC. aka REELZCHANNEL aka REELZ, a Minnesota corporation and DOES 1 through 50, inclusive, | **CONTRACT** <br> **3. BREACH OF ORAL CONTRACT** <br> **4. DECLARATION OF RIGHTS** <br> **5. QUANTUM MERUIT** <br><br> **DEMAND FOR JURY TRIAL** |
| Defendants. | |

*THE KERNAN LAW FIRM*
*9663 Santa Monica Blvd., Suite 450*
*Beverly Hills, California 90210*
*(310) 490-9777*

PLAINTIFF in the above-captioned action hereby alleges as follows:

1.     At all times mentioned herein, Plaintiff GAIL BLECKMAN ("Bleckman") is an individual residing in Los Angeles, California. Bleckman was, at all relevant times, an independent producer and researcher on a film project about the true story of the infamous Amityville murders committed by Ronald DeFeo Jr. in 1974 ("Amityville Project").

## JURISDICTION AND VENUE

2.     This action arises under the Copyright Laws of the United States (Title 17, U.S.C. §101 et seq.) and the common law of the State of California.

3.     This court has exclusive jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 in that this action involves claims arising under the Copyright Laws of the United States. To the extent that this action is based on related state claims, the Court has supplemental jurisdiction thereto under 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 in that Defendants transact business in the county of Los Angeles, State of California.

## PARTIES

5.     Upon information and belief, at all times mentioned herein, Defendant RYAN KATZENBACH ("Katzenbach") dba KATCO MEDIA ("Katco") is an individual doing business in Los Angeles, California and is co-owner of the Amityville Project. Upon information and belief, Katco has a business address at 6404 Wilshire Blvd., Suite 1800, Los Angeles, California, 90048.

6.     Upon information and belief, at all times mentioned herein, Defendant AMITYVILLE HOLDINGS, INC ("Amityville Holdings") is a California corporation doing business in Santa Ana, California. Upon information and belief, Amityville Holdings has a business address at 6 Hutton Center Drive, 6th Floor, Santa Ana, California, 92707.

7.     Upon information and belief, at all times mentioned herein, Defendant DIANA MAIOCCO ("Maiocco") is an individual doing business in Los Angeles, California. On information and belief, Maiocco is Vice President and Chief Operating Officer of Defendant Amityville Holdings, and co-owner of the Amityville Project with Defendant Katzenbach.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

8.      Upon information and belief, at all times mentioned herein, Defendant HUBBARD BROADCASTING, INC. aka REELZCHANNEL aka REELZ ("REELZ") is a Minnesota corporation doing business in Los Angeles, California. On information and belief, Hubbard's Corporate Headquarters are located at 3415 University Avenue, St. Paul, MN 55114. On information and belief, REELZ has a business address at 1201 W. 5th Street, Los Angeles, CA 90017.

9.      Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained. As alleged herein, "Defendants" shall mean all named Defendants and all fictitiously named Defendants.

10.     Plaintiff is informed and believes and on that basis alleges that Defendants, at all times relative to this action, were the agents, servants, partners, joint venturers and employees of each of the other Defendants and in doing the acts alleged herein were acting with the knowledge and consent of each of the other Defendants in this action. Alternatively, at all times mentioned herein, each of the Defendants conspired with each other to commit the wrongful acts complained of herein. Although not all of the Defendants committed all of the acts of the conspiracy or were members of the conspiracy at all times during its existence, each Defendant knowingly performed one or more acts in direct furtherance of the objectives of the conspiracy. Therefore, each Defendant is liable for the acts of all of the other conspirators.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

## BACKGROUND FACTS

11.   Around 2010, Plaintiff Bleckman became acquainted with Defendant Maiocco while making a documentary about cancer patients. Defendant Maiocco offered to introduce Bleckman to friend Defendant Katzenbach, who was in the early stages developing a film about the true story of the infamous Amityville murders committed by Ronald DeFeo Jr. in 1974 ("Amityville Project") with Defendant Maiocco. The Amityville Project would lead to development of at least three films: "Shattered Hopes: The True Story of the Amityville Murders - Part 1: From Horror to Homicide"; "Shattered Hopes: The True Story of the Amityville Murders - Part 2: Mob, Mayhem, Murder"; "Shattered Hopes: The True Story of the Amityville Murders - Part 3: Fraud & Forensics" ("Films"), a special aired on television by Defendant REELZ titled "High Hopes: The Amityville Horror Murders" ("REELZ Special") and a DVD interview with convicted killer Ronald DeFeo Jr. ("DeFeo Interview").

12.   On information and belief, Defendants Katzenbach and Maiocco are co-owners of the Amityville Project.

13.   On information and belief, on or about the summer of 2010, Defendants Katzenbach and Maiocco decided to move forward with production of the Amityville Project through Defendant Katzenbach's production entity Katco.

14.   At that time, Bleckman was preparing to permanently move from her native New York to Los Angeles, California. On or about May or June of 2010, Defendant Katzenbach asked Bleckman if she would perform research for the Amityville Project in New York during the month she would be preparing to move from New York.

## The Oral Agreement

15.   On information and belief, in a conversation between Bleckman and Defendant Katzenbach, Defendant Katzenbach explained that he could not pay

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Bleckman for her work and instead offered to give her a percentage of any gross receipts derived from the Amityville Project in exchange for her work on the Amityville Project. On information and belief, Bleckman and Defendant Katzenbach orally agreed that Bleckman was to receive 5% of any gross receipts from the Amityville Project, and as consideration Bleckman would conduct research and perform other work for the Amityville Project as an independent producer and at her own expense ("Agreement").

16.     During this time, Defendant Katzenbach held out his production entity Katco, as a Screen Actor's Guild Signatory Production Company. Bleckman understood this to mean that Katco had signed, and agreed to abide by, the labor agreement negotiated by the Screen Actors Guild-American Federation of Television and Radio Artists union (SAG-AFTRA).

17.     On information and belief, Katco is a signatory of the SAG-AFTRA labor agreement. This allowed Katco to utilize SAG-AFTRA members in its production of the Amityville Project. In fact, the REELZ special was narrated by actor Ed Asner, former president of the Screen Actors Guild.

18.     Bleckman relied on Defendant Katzenbach's representation that any production from the Amytiville Project created through Katco would be fully compliant with the SAG-AFTRA labor agreement.

**Bleckman's Protected Works**

19.     On or about August 2010, Bleckman began doing research for the Amityville Project in accordance with her Agreement with Defendant Katzenbach. Bleckman's work consisted of obtaining documents, crime scene photos, and other information through her personal connections with the Suffolk County police in New York State, as well as personally shooting video footage for the Amityville Project. In addition, Bleckman also helped produced some segments that appeared in the Films

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

20.     At all relevant times, Bleckman worked as an independent contractor on the Amityville Project. In a letter of authorization, Defendant Katzenbach stated that Bleckman was "an independent agent and producer who represents our project in an unofficial capacity and on a commission status." (Exhibit "A"). Thus, as an independent contractor, all copyrights in proprietary footage and photographs and other protectable works created by Bleckman vested in Bleckman.

21.     At no time did Bleckman and Defendant Katzenback discuss assignment of Bleckman's rights in her proprietary footage, and at no time did Bleckman ever execute any written assignment of her rights to her proprietary footage to any person or entity.

22.     Through her efforts, Bleckman was able to obtain considerable information that had never been made public, including crime scene photos, unredacted reports, and files previously thought to be lost or destroyed. For example, Bleckman's proprietary research uncovered evidence that more than one weapon had been used to commit the murders, and that the second weapon had likely been discarded in a canal near the house where the murders were committed. This theory would be a central storyline in the Films and the REELZ Special. (Exhibit "B"). Other storylines involving the disputed existence of a seventh body at the crime scene and a mysterious picture of a bloody shoe were developed from Bleckman's proprietary research and featured prominently in the Films and the REELZ Special. (Exhibits "C" and "D").

23.     In addition to her proprietary research, Bleckman created video footage depicting her explaining the significance of a blood pattern on a piece of clothing and describing spent gun shell casings.

24.     Bleckman disclosed her proprietary research and ideas for the Amityville Project to Defendant's Katzenbach and Maiocco relying on the

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Agreement, and with the expectation that she would be paid if any of her ideas or proprietary research were to be used as part of the Amityville Project.

### Bleckman's Reasonable Reliance On The Agreement

25.   Bleckman spent the next seven months working on the Amityville Project. During this time, Defendant Katzenbach did not reimburse her for any travel or lodging expenses. On information and belief, while working on the Amityville Project, Bleckman spent an estimated $12,000-$15,000 of her own money, relying on her Agreement with Defendant Katzenbach.

26.   Bleckman also used her considerable contacts in the entertainment industry to further the Amityville Project. On or about October, 2010, Defendant Katzenbach asked Bleckman to spearhead obtaining distribution for the Amityville Project. Defendant Katzenbach drafted a letter of authorization on Katco letterhead dated October 27, 2010, authorizing Bleckman to discuss the Amityville Project with distributors. (Exhibit "A" ). The letter states that Bleckman is "an independent agent and producer of the project" and that she is being paid "on a commission status."

27.   Throughout 2010, 2011, and 2012, Bleckman continued to do research for the Amityville Project at her own expense.

### Defendant's Katzenbach and Maiocco Cease Contact With Bleckman

28.   On information and belief, in December of 2011, Katco transferred all of its rights in the Amityville Project to the entity Amityville Holdings. (Exhibit "E").

29.   On or about January 2012, Bleckman and Defendant Maiocco had a falling out, and Bleckman sent an email to Defendant Katzenbach explaining the situation and her desire to continue working on the project.

30.   On or about May 23, 2012, Bleckman emailed Defendant Katzenbach stating that she had repeatedly asked for a formal written document confirming the Agreement, and stating that because of Defendant Katzenbach's

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 496-9777

delays and unwillingness to provide an accounting, Bleckman had missed the deadline to file her taxes. In the email Bleckman told Defendant Katzenbach to either "ditch the existing footage" of Bleckman explaining the significance of pieces of evidence that she created, or "re-shoot it." (Exhibit "G").

31.    In an email dated October 15, 2012 Defendant Katzenbach acknowledged that he and Bleckman had a "verbal 5% arrangement." (Exhibit "K").

32.    Bleckman sent a response email on October 16, 2012 stating that Defendant Katzenbach had still refused to submit a written document confirming the Agreement and stating that Defendant Katzenbach was to "cease and desist from using any footage of me," a reference to footage Bleckman shot of her describing bloody clothing and shell casings. (Exhibit "K").

33.    On or about October 17, 2012, Defendant Katzenbach emailed Bleckman a written proposal for Bleckman to execute, which included a proposed assignment of Bleckman's rights in her copyrighted footage and photographs ("Proposed Contract"). Katzenbach sent the Proposed Contract on Katco letterhead (Exhibit "F").

34.    Bleckman was aware that in December of 2011, Katco transferred all of its rights in the Amityville Project to the entity Amityville Holdings (Exhibit "E"). Bleckman did not execute the document.

35.    In 2013, Defendants Katzenbach and Maiocco ceased all contact with Bleckman regarding the development and distribution of the Amityville Project.

### Defendants' Infringement

36.    In late 2014, Bleckman received a phone call from a friend congratulating her on the airing of the REELZ Special on Defendant REELZ's television network. Up until the phone call, Bleckman had no knowledge that the

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Amityville Project had continued, let alone that a full length film had been produced and sold to Defendant REELZ.

37.     On information and belief, on or about October 29, 2014, Defendant REELZ  aired the REELZ Special. Bleckman was able to view a portion the REELZ Special, and discovered that the proprietary footage she shot had been included in the REELZ Special, including the scene that depicted Bleckman explaining the significance of a blood pattern on a piece of clothing and describing spent gun shell casings. Bleckman had no knowledge that her proprietary footage would be used in the REELZ Special, nor did she give permission to Defendants Katzenbach, Maiocco or REELZ to use the footage, nor was she compensated for use of that footage.

38.     Bleckman later discovered that in addition to the REELZ Special, the Films and DeFeo Interview had also been produced by Defendants Katzenbach and Maiocco, all of which utilized the copyrighted materials, proprietary research and ideas derived from Bleckman's work on the Amityville Project.

39.     On or about March or April of 2015, Bleckman contacted Defendant REELZ identifying herself as a producer on the Amityville Project and asking for Defendant Katzenbach's contact information so that she could get in touch with him regarding payment of her royalties for the REELZ Special. On or about July, 8, 2015, Defendant Katzenbach sent an email to Bleckman and a REELZ Executive acknowledging that he and Bleckman had agreed to a royalty payment and stating that he would not issue a check or royalty statement until the October 2012 Proposed Contract was signed and delivered. (Exhibit "H").

40.     On information and belief, Defendant REELZ is a signatory to the SAG-AFTRA labor agreement, meaning that Defendant REELZ has agreed only to exploit films that are compliant with the SAG-AFTRA labor agreement.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

41.   On information and belief, Part 3 of the Films, and the REELZ Special are not registered through SAG-AFTRA and are not in compliance with the SAG-AFTRA labor agreement and are not registered with SAG-AFTRA.

42.   At no time did Bleckman assign any of her rights in her protected works for exploitation in any of the Films or in the REELZ Special.

43.   Bleckman relied on Defendant Katzenbach's representation that all Katco productions would comply with the SAG-AFTRA labor agreement, and at no time did she give Defendant Katzenbach nor Defendant REELZ permission to exploit her protected works on the REELZ Special, which, on information and belief, is not in compliance with the SAG-AFTRA labor agreement.

### Defendant Katzenbach Refuses To Negotiate In Good Faith

44.   On or about 2015, Bleckman contacted attorney Phil Wild ("Attorney Wild") who advised Bleckman not to sign the Proposed Contract. Bleckman retained Attorney Wild to negotiate the terms of the Proposed Contract with Defendant Katzenbach. Attorney Wilde sent Defendant Katzenbach a redlined document with revisions to the Proposed Contract. (Exhibits "I").

45.   In an email to Attorney Wild dated September 1, 2015, Defendant Katzenbach rejected the revisions and promised to send a follow up email detailing his position regarding the disputed points. (Exhibit "J"). Attorney Wild sent a follow up email asking for Defendant Katzenbach's response no later than September 11, 2015. (Exhibit "J").

46.   On information and belief, Defendant Katzenbach never responded to Attorney Wild's email. On information and belief, Defendant Katzenbach sent an email directly to Bleckman accusing her of acting in bad faith and breaching her fiduciary duties.

47.   Since that time, Bleckman has unsuccessfully tried to obtain her 5% royalty that she and Defendant Katzenbach agreed to for her work on the Amityville Project.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**FIRST CAUSE OF ACTION**

**(Violation of the Federal Copyright Act, 17 U.S.C. § 101 et seq –**

**Against All Defendants)**

48.     Plaintiff repeats, alleges and incorporates by reference paragraphs 1 to 47 as though fully set forth herein.

49.     At all relevant times, Bleckman worked as an independent contractor on the Amityville Project. In a letter of authorization allowing Bleckman to talk to distributors about the Amityville Project, Defendant Katzenbach stated that Bleckman was "an independent agent and producer who represents our project in an unofficial capacity and on a commission status." (Exhibit "A"). Thus, as an independent contractor, all copyrights in proprietary footage and photographs shot by Bleckman vested in Bleckman.

50.     At no time did Bleckman make a formal assignment of rights in her proprietary footage and photographs to anyone.

51.     On or about May 23, 2012, Bleckman emailed Defendant Katzenbach stating Defendant Katzenbach must either "ditch the existing footage" of Bleckman explaining the significance of pieces of evidence that she created, or "re-shoot it." (Exhibit  "G").

52.     On or about October 16, Bleckman sent a further email to Defendant Katzenbach telling him to "cease and desist from using any footage of me," a reference to footage Bleckman shot of her describing bloody clothing and shell casings. (Exhibit "K").

53.     That footage was included without Bleckman's permission in the REELZ Special.

54.     On or about October 29, 2014, Defendant REELZ began broadcasting the REELZ Special. The REELZ Special has aired more than once, most recently on September 10, 2016.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

55.    As alleged hereinabove, the named Defendants have infringed upon Plaintiff Bleckman's copyright by using Plaintiff Bleckman's footage without her permission.

56.    Upon information and belief, Defendants have thereafter intentionally broadcasted, distributed, published, and otherwise exploited Plaintiff's footage without authorization, in violation of Plaintiff Bleckman's rights.

57.    Upon information and belief, Defendants have intentionally violated the Federal Copyright Act, Title 17 U.S.C. § 101 et seq., entitling Plaintiff to all damages and remedies provided by the Act.

58.    Upon information and belief, Defendants continue to infringe upon Plaintiff Bleckman's copyrights, causing Plaintiff Bleckman irreparable injury and damage. Said infringement entitles Plaintiff Bleckman to actual and statutory damages, injunctive and other relief provided by the Copyright Act.

## SECOND CAUSE OF ACTION

**(Breach of Implied-In-Fact Contract – Against Defendants Katzenbach, Maiocco, Amityville Holdings and DOES 1-25)**

59.    Plaintiff incorporates paragraphs 1 to 58 as though fully set forth herein.

60.    Defendants' Films, the REELZ Special, and the Defeo Interview utilized Plaintiff Bleckman's key ideas and proprietary research, and are currently distributed through Amazon Prime, Defendants' Website (AmityvilleFilm.com), and periodically broadcasted by Defendant REELZ.

61.    Plaintiff Bleckman disclosed her ideas and/or proprietary research to Defendants with the understanding that she would be compensated if her ideas and proprietary research were used by them.

62.    By virtue of Defendants' acceptance and utilization of the services, ideas, and proprietary research of Plaintiff Bleckman, an agreement was implied-

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

12

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

in-fact to pay Plaintiff Bleckman the reasonable value of those services and to credit Plaintiff Bleckman as executive producer thereof.

63.    Plaintiff Bleckman performed all covenants and conditions required of her pursuant to said Agreement.

64.    Defendants breached said Agreement by utilizing and profiting from Plaintiff Bleckman's ideas and proprietary research without compensation or appropriate credit to Plaintiff.

65.    As a result of the foregoing, Plaintiff Bleckman was damaged in an amount to be proved at trial.

## THIRD CAUSE OF ACTION

### (Breach of Oral Contract – Against Defendants Katzenbach, Maiocco, Amityville Holdings, and DOES 1-25)

66.    Plaintiff incorporates paragraphs 1 to 65 as though fully set forth herein.

67.    Plaintiff entered into an oral agreement with Defendants Katzenbach and Maiocco on or around May or June of 2010, as alleged hereinabove, including:

(a)    That Plaintiff would be compensated 5% of all gross receipts in connection with the Amityville Project, including but not limited to domestic and foreign distribution and merchandising, and credited for the exploitation of her idea and proprietary research for the Amityville Project by Defendants or by any third parties to whom defendants disclosed the ideas or research.

68.    Plaintiff Bleckman performed all covenants, conditions and obligations required under the Agreement.

69.    Defendants breached said Agreement by engaging in the acts and omissions set forth hereinabove and also by doing the following:

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

1         (a)    Defendants took Plaintiff Bleckman's ideas and proprietary

2         research and developed a series of properties without

3         any compensation or credit to Plaintiff Bleckman;

4         (b)    Defendants took sole credit for creation of all properties

5         developed from the Amityville Project without the agreed upon

6         credit to Plaintiff Bleckman.

7      70.    Plaintiff Bleckman has been damaged by said breaches in an amount

8  to be proved at trial.

9  **FOURTH CAUSE OF ACTION**

10  **(Declaratory Relief – Against All Defendants)**

11      71.    Plaintiff incorporates paragraphs 1 to 70 as though fully set forth

12  herein.

13      72.    An actual dispute and controversy now exists between the

14  Defendants and Plaintiff Bleckman as to whether Plaintiff Bleckman should be

15  entitled to compensation, and credit in connection with the Films, REELZ

16  Special, and the Defeo Interview developed from Plaintiff Bleckman's ideas,

17  proprietary research, and copyrighted materials on the Amityville Project.

18      73.    Plaintiff Bleckman believes that she is entitled to compensation and

19  credit in connection with the properties developed from the Amityville Project.

20      74.    Plaintiff Bleckman is informed and believes and on that basis alleges

21  that Defendants dispute Plaintiff Bleckman's contentions. Plaintiff therefore

22  desires and requests a judicial determination and declaration of the respective

23  rights and obligations of the parties.

24  **FIFTH CAUSE OF ACTION**

25  **(*Quantum Meruit* – Against All Defendants)**

26      75.    Plaintiff incorporates paragraphs 1 to 75 as though fully set forth

27  herein.

28

76.     In preparing and developing her ideas, proprietary research, and copyrighted materials, Plaintiff Bleckman has rendered significant services to Defendants.

77.     Those services were of a direct and substantial benefit to Defendants.

78.     Therefore, there is an agreement implied-in-law and in-fact to pay Plaintiff Bleckman the reasonable value of her services.

79.     Consistent with custom and practice in the entertainment industry, Plaintiff Bleckman should be paid the reasonable value of Plaintiff Bleckman's services at an amount to be determined at trial.

**WHEREFORE, PLAINTIFF prays:**

### ON THE FIRST CAUSE OF ACTION

1.     For damages in an amount according to proof in an amount to be proved at trial.

### ON THE SECOND CAUSE OF ACTION:

2.     For damages in an amount according to proof in an amount to be proved at trial.

### ON THE THIRD CAUSE OF ACTION:

3.     For damages in an amount according to proof in an amount to be proved at trial.

### ON THE FOURTH CAUSE OF ACTION:

4.     For a declaration of rights and obligations.

### ON THE FIFTH CAUSE OF ACTION:

5.     For the reasonable value of services rendered.

### ON ALL CAUSES OF ACTION:

6.     For costs of suit incurred herein;

7.     For attorneys' fees;

8.     For such other and further relief as is just and proper.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

15

**COMPLAINT FOR DAMAGES**

1

2  DATED: September 1, 2016                    THE KERNAN LAW FIRM

3

4                                          By:_____

5                                              S. Michael Kernan
                                               Attorney for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777